Teague I. Donahey (ISB #9963)
Christopher C. McCurdy (ISB #8552)
HOLLAND & HART LLP
800 W. Main Street, Suite 1750
Boise, ID 83702-7714
Telephone:  208.342.5000
tidonahey@hollandhart.com
ccmccurdy@hollandhart.com

Ryan B. McCrum (*Pro Hac Vice* Forthcoming)
JONES DAY
900 Lakeside Avenue
Cleveland, Ohio 44114
Telephone:  216.586.3939
rbmccrum@jonesday.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICRON TECHNOLOGY, INC. and MICRON SEMICONDUCTOR PRODUCTS, INC., | **Case No.** |
| Plaintiffs, | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| v. | **REDACTED** |
| POLARIS POWERLED TECHNOLOGIES, LLC, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiffs Micron Technology, Inc. and Micron Semiconductor Products, Inc. (collectively "Micron" or "Plaintiffs") seek a declaration that Micron does not infringe United States Patent Nos. 8,554,968 ("the '968 patent"), 8,601,346 ("the '346 patent"), 8,588,228 ("the '228 patent"), 9,183,085 ("the '085 patent"), 9,021,337 ("the '337 patent"), 9,830,245 ("the '245 patent"), 9,305,661("the '661 patent"), and 9,799,405 ("the '405 patent") (collectively the "asserted patents" or "patents-in-suit").  Micron also seeks a declaration that Defendant Polaris PowerLED

COMPLAINT FOR DECLARATORY JUDGMENT – Page 1

Technologies, LLC's ("Polaris" or "Defendant") assertion and demand for licensing payments related to each of the asserted patents against Micron are a violation of Idaho's Bad Faith Assertions of Patent Infringement Act (Idaho Code, Title 48, Chapter 17). Micron also seeks a declaration that the asserted patents are unenforceable under applicable law. Micron hereby alleges:

## INTRODUCTION

1.     Micron is headquartered in Boise, Idaho and is a leading member of Idaho's corporate community. With more than 6,000 employees in Idaho alone, Micron is one of Idaho's largest private employers. Micron is a world leader in innovative memory and storage solutions that transform how the world uses information. For over 40 years, Micron has been and continues to be instrumental to the world's most significant technology advancements, delivering optimal memory and storage systems for a broad range of applications. Micron devotes more than $2.5 billion annually to research and development and, in a tangible measure of Micron's innovations and contributions, Micron is proud to have one of the world's largest patent portfolios, having obtained over 58,000 patents. Micron is also proud of its continued investments in Idaho. Micron recently announced plans to invest approximately $15 billion through the end of the decade to construct a new plant for leading-edge memory manufacturing in Boise. Estimates predict that this project will create over 17,000 new jobs.

2.     Micron's success has come with a price—fending off baseless assertions of patent infringement. Indeed, the patent landscape has been marred over the past few decades by a new type of business model where investors purchase low-value patents and then use them as weapons to extract unmerited settlement payments and licensing fees from companies like Micron. Such entities—often referred to as "non-practicing entities," "patent assertion entities," or, more derogatively, "patent trolls"—do not make products or perform services. They view companies

like Micron as having deep pockets, and they know that the costs and risks of fighting meritless patent litigation make an untenable situation for their targets. Either those target companies can spend millions of dollars fighting to defeat meritless claims (and risk judgments entered by juries who are often unfamiliar with the complex technologies that are at issue), or they can pay settlements that are usually carefully calculated to be less than the cost of fighting. The worst of these non-practicing entities will not drop their suits even in the face of evidence that their patents are invalid or not infringed. These entities demand that Micron pay license fees and, if Micron refuses, they attempt to coerce compliance by forcing Micron to spend millions of dollars engaging in complex and protracted patent litigation.

3.      Micron is currently facing such threats from Polaris, a non-practicing patent assertion entity whose entire business model consists of sending out cease-and-desist letters to technology companies across the United States and seeking to extract license payments. Polaris sent baseless infringement allegations and demands to Micron seemingly without having done even a minimal amount of investigation or due diligence. For example, Polaris is asserting:

(a)      patents where certain of the claimed inventions were actually co-developed with Micron and, thus, are co-owned by Micron and/or licensed to Micron;

(b)      patents that Polaris cannot even legally assert, either because it is not the actual owner of the patent, or because it does not own the necessary terminal disclaimer patents;

(c)      patents against accused products which publicly and easily available information reveals were discontinued nearly a decade ago and, therefore, not subject to any claim of patent infringement because the last sale of the product is outside the 6-year damages window and/or occurred before issuance of an asserted patent (*e.g.,* the M600 SSD); and

(d)    patents where Polaris alleges infringement based on components they know are supplied by licensed third parties (*e.g.*, Microchip).

4.    Had Polaris performed any reasonable diligence, it would have quickly uncovered each of the foregoing facts that render the infringement allegations baseless.

5.    **Micron co-owns and/or is licensed to asserted patents.** On July 2, 2009, Micron and Integrated Device Technology, Inc. ("IDT")—the original assignee of all but one asserted patent—entered into a Product Development and License Agreement ("the 2009 Development Agreement"). ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████ On information and belief, several of the alleged inventions disclosed in the Polaris patents were co-developed by Micron and IDT and, thus, are co-owned by or licensed to Micron. Polaris is—or should be—well aware of the collaboration between IDT and Micron since IDT and Micron publicly announced the results of their collaboration through various press releases.  Moreover, Polaris presumably did some due diligence before acquiring the asserted patents. Unfortunately, none of this stopped Polaris from sending multiple letters to Micron alleging infringement of patents that emerged from this joint collaboration.

6.    **Polaris asserts a patent it does not own.** Polaris is also asserting infringement of a patent that it does not own and with respect to which it lacks legal standing to assert.  For example, Polaris asserts that Micron infringes U.S. Patent No. 9,418,804 ("the '804 patent"), entitled "Switching Device."  But the '804 patent issued to Eaton Electrical IP GmbH & Co. KG and is currently assigned to Eaton Intelligent Power Limited.  No publicly available document in

the United States Patent and Trademark Office ("USPTO") assignment records exists that would suggest that Polaris is an owner of this patent or that it has any right to assert infringement. Polaris could have quickly confirmed that it did not own the '804 patent before including it in its cease-and-desist letters to Micron. Moreover, even a cursory review of the '804 patent shows that it describes and claims a device that would not be found in the SSD cards Polaris accuses of infringement.

7.    **Polaris asserts a patent it cannot enforce.**    Polaris also asserts that Micron infringes the '245 patent, which is the subject of a terminal disclaimer that was required to overcome a non-statutory double patenting rejection over the claims of U.S. Patent No. 9,645,870 ("the '870 patent"). The terminal disclaimer expressly states that "any patent so granted on the instant application shall be enforceable only for and during such period that it and any patent granted on the reference application are commonly owned." Upon information and belief, Polaris did not obtain title to the '870 patent when it acquired the '245 patent. According to the USPTO assignment records, Polaris does not own the '870 patent and the '245 patent is thus unenforceable. Polaris cannot enforce the '245 patent against Micron, a fact it should have clearly known had it conducted reasonable due diligence before sending multiple cease-and-desist letters to Micron.

8.    **Polaris accuses discontinued products of infringement for which no relief is available.**    Had Polaris performed any due diligence before lodging its baseless infringement allegations, it would have also learned that it is accusing Micron products of infringement for which no relief is available. For example, a basic Google search for the accused "M600 SSD" product reveals that Micron discontinued that product in 2016, and the last shipment date was February 1, 2017. *See e.g.,* (https://www.allelcoelec.com/datasheets. 5e/MTFDDAV128MBF-1AN12ABYY.pdf?srsltid=AfmBOoqtocCY2vBfhz5kuly

PFqFlLE49hkv9M1WLMeXagFrjmCPyqK3b.)  However, 35 U.S.C. § 286 provides that "except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action."  Here, the last sale of the M600 SSD product occurred over eight years ago.  Moreover, at least one asserted patent (*e.g.*, the '405 patent) did not even issue until after the M600 SSD product was last sold, such that it cannot be infringed by the M600 SSD product—a product cannot infringe a patent if it was never sold during the life of the patent.

9.    **Polaris accuses products that it knows are licensed.**  Had Polaris performed a good-faith investigation into its claims, it would have also learned that the accused functionality resides in components (*i.e.*, controllers) that are supplied to Micron by third parties, and that at least one of those third parties (Microchip Technology, Inc.) appears to have a license to the Polaris patents.  Indeed, every one of the asserted patents assigned to Polaris was previously owned by either Microchip or its predecessor (Microsemi Corporation) and was transferred to Polaris.  Publicly available documents show that Microchip's predecessor (Microsemi Corporation) entered into patent license agreements with and obtained a non-exclusive license to Polaris patents, in which case the Microchip controllers used in Micron's accused products are also licensed as a matter of fundamental patent law.

10.    In addition to the foregoing facts, which alone establish that Polaris is asserting its patents against Micron in bad faith, Polaris has not even attempted to substantiate its bare infringement allegations.  Its cease-and-desist letters do not even attempt to read the Polaris patents on Micron's products, for example by providing claim charts that provide a detailed comparison of the patent claims to the products—the standard method of alleging infringement. Rather, Polaris summarily asserts infringement against Micron products without providing any substantive

analysis whatsoever. Had Polaris performed proper due diligence and a proper infringement analysis, it would have been forced to acknowledge that Micron does not infringe.

11.    Idaho's Bad Faith Assertions of Patent Infringement Act (Idaho Code, tit. 48, ch. 17) was specifically enacted to disincentivize the very conduct in which Polaris engages here. It recognizes that "abusive patent litigation, and especially the assertion of bad faith infringement claims, can harm Idaho companies" and "harm[] Idaho's economy."

12.    For the foregoing reasons and those set forth below, Micron does not infringe any of the asserted patents, at least some of the asserted patents are unenforceable against Micron, and Polaris should be held liable for its bad faith assertion of the asserted patents.

## THE PARTIES

13.    Plaintiff Micron Technology, Inc. is a Delaware corporation with its principal place of business at 8000 S Federal Way, Boise, Idaho 83716.

14.    Plaintiff Micron Semiconductor Products, Inc. is an Idaho corporation with its principal place of business at 8000 S Federal Way, Boise, Idaho 83716.

15.    Upon information and belief, Defendant Polaris is a California limited liability company having its address at 5150 East Pacific Coast Highway, Suite 200, Long Beach, California 90804.

## JURISDICTION AND VENUE

16.    Micron repeats and realleges Paragraphs 1 through 15 of this complaint.

17.    This action arises under the Patent laws of the United States, Title 35 of the United States Code, and under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This action also arises under Idaho Bad Faith Assertion of Patent Infringement Statute, Idaho Code § 48-1701, *et seq.*

18.    The Court has subject matter jurisdiction over the claims alleged in this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201-2202 because this action involves claims arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, and under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. The Court has supplemental jurisdiction over Micron's state law claim(s), which form part of the same case or controversy as the federal question claims, pursuant to 28 U.S.C. § 1367(a).

19.    Jurisdiction is also proper because Polaris and Micron are citizens of different states, and the value of the controversy exceeds $75,000.

20.    The case and controversy between the parties stem from Polaris's multiple cease-and-desist letters accusing Micron of infringing the patents-in-suit and demanding that Micron stop making, using, importing, selling and offering for sale the accused products. Polaris's actions have created a real, immediate, and justiciable dispute between Micron and Polaris as to whether Micron's accused products would infringe the patents-in-suit.

21.    Polaris has subjected itself to jurisdiction in this Court because Polaris has purposefully and repeatedly directed its activities at residents of Idaho, including sending its demand letters to Micron, asserting infringement of the asserted patents, and requesting licensing discussions.

22.    Moreover, Polaris has subjected itself to jurisdiction in this Court because on information and belief, Polaris has entered into agreements, including license agreements, with parties that are transacting significant business in Idaho, and pursuant to those agreements, Polaris has an obligation to enforce the asserted patents, including in Idaho.

23.    All but one of the asserted patents were at one time assigned to PMC-Sierra US ("PMC-Sierra"). Between 2001 and 2015, PMC-Sierra had multiple rounds of layoffs, and it was

eventually acquired by Microsemi Corporation ("Microsemi") in 2016.  On information and belief, on July 21, 2017, Microsemi formed at least two separate companies: (1) LED Display Technologies, LLC ("LED Display"), which later became Polaris; and (2) IP GEM.  Upon information and belief, all but one of the asserted patents were assigned to IP GEM.  In 2021, IP GEM assigned those patents to Polaris.

24.    Upon information and belief, Microsemi entered into various agreements with both LED Display (now Polaris) and IP GEM around the time the latter two companies were formed by Microsemi. For example, with respect to LED Display, Microsemi entered agreements whereby it assigned patents to LED Display, LED Display gave a license to those patents back to Microsemi, and LED Display was required to "monetize" the patents.  Upon information and belief, IP GEM and Microsemi entered into similar agreements, such that when IP GEM assigned certain asserted patents to Polaris, Polaris took those patents subject to obligations to Microsemi, including an obligation to monetize the patents. Microsemi was purchased by Microchip in 2018.

25.    One of the asserted patents did not come to Polaris through IP GEM—*i.e.*, the '245 Patent—but was originally assigned to Atmel Corporation, then to Microchip, and finally to Polaris.  Upon information and belief, Microchip has a license to the '245 patent and that patent is also subject to Polaris's obligation to enforce and monetize patents in Idaho. Thus, upon information and belief, Microchip—a company doing substantial business in Idaho—is licensed to at least some of the asserted patents, and Polaris has an obligation to monetize and enforce those asserted patents, including against alleged infringers in Idaho.

26.    Polaris has further subjected itself to personal jurisdiction in this Court because on information and belief, Polaris has entered into agreements, including license agreements, with

additional parties that are transacting significant business in Idaho, including Samsung Electronics Co., Ltd. and LG Electronics, Inc.

27.     Personal jurisdiction over Polaris is also proper in this District under Idaho Code § 48-1704 because Polaris sent a demand letter to an Idaho person and transacted business in the State of Idaho.  *See* Idaho Code § 48-1704 ("Any person outside of this state sending a demand letter to an Idaho person shall be deemed to be transacting business within this state within the meaning of section 5-514(a), Idaho Code, and shall thereby be subject to the jurisdiction of the courts of this state.")  Micron is an "Idaho Person" as defined in Idaho Code § 48-602 and is a "Target" under Idaho Code §§ 48-1702(3)(a)-(b).

28.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b) as a substantial part of the events giving rise to the claims alleged in the Complaint occurred in this District, and Polaris is subject to the Court's personal jurisdiction with respect to this civil action.

## **FACTUAL BACKGROUND**

29.     Micron repeats and realleges Paragraphs 1 through 28 of this complaint.

### **Polaris's Patent Assertion Business Model**

30.     Polaris is a patent assertion entity that was formed in July 2017.  On information and belief, Polaris does not make, use or sell any products of its own.  Instead, Polaris asserts its patents against companies that do provide products and/or services to try to extract settlement payments and licensing fees from those companies.  In fact, as described above, Polaris's agreements with Microsemi (which was purchased by Microchip) obligate Polaris to monetize and enforce its patents.  And that is exactly what Polaris is trying to do. Polaris has engaged in massive litigation campaigns asserting many different patents, including patents it does not own, patents that are co-owned or licensed by the target, and patents it cannot assert.

COMPLAINT FOR DECLARATORY JUDGMENT – Page 10

31.     On information and belief, Polaris has filed more than fifteen cases against various companies, including several cases in the Eastern District and Western District of Texas, where Polaris has no apparent ties.  Many of these cases resulted in settlements that occurred in the early phases of the case:

| Case | Case Status |
|------|-------------|
| Polaris v. Samsung (EDTX 2024) | Active – joint stipulation to dismiss filed |
| Polaris v. Western Digital, Avnet, Newegg (C.D. Cal 2024) | Active – pleadings phase |
| Polaris v Western Digital (WDTX 2024) | Voluntarily dismissed / settled – before Answer was filed |
| Polaris v. Vizio et al. (C.D. Cal 2023) | Active |
| Polaris v. Samsung (EDTX 2022) | Active – stipulation to dismiss filed 1/29/25 |
| Polaris v. Nintendo (WDWA 2022) | Terminated – stayed pending IPR, then settled/voluntarily dismissed |
| Polaris v. Dell (WDTX  2022) | Active |
| Polaris v. Vizio (CAFC 2020) | Terminated – affirmed summarily |
| Polaris v. Hisense (C.D. Cal 2020) | Terminated – stayed pending IPR then dismissed |
| Polaris v. LG (C.D. Cal 2020) | Terminated – stayed pending IPR, then dismissed |
| Polaris v. TCL (C.D. Cal 2020) | Terminated – stayed pending IPR, then dismissed |
| Polaris v. Wistron (C.D. Cal 2019) | Terminated – dismissed after answer |
| Polaris v. Hon Hai (C.D. Cal 2019) | Terminated – dismissed after answer |

| Polaris v. AmTRAN (C.D. Cal 2019) | Terminated – dismissed after answer |
| Polaris v. Top Victory Electronics (C.D. Cal 2019) | Terminated – dismissed after answer |
| Polaris v. Samsung (EDTX 2019) | Terminated – dismissed before answer |
| Polaris v. Vizio (C.D. Cal 2018) | Terminated – Vizio non-infringement MSJ granted, |
| Polaris v. Samsung (EDTX 2017) | Terminated – voluntarily dismissed after claim construction, just before trial |

**Polaris's Bad-Faith Letters to Micron**

32.     Micron is one of Polaris's latest enforcement targets.  On January 17, 2025, Polaris sent Micron two separate letters claiming to own the asserted patents. Both letters were sent to Michael Ray, Chief Legal Officer, at Micron's headquarters in Boise, Idaho.  Polaris's letters stated that Micron and its affiliates "infringe these patents." Polaris demanded that Micron "cease from making, using, importing, selling and offering for sale products that are infringing and using Polaris's patent technologies." In the first letter, Polaris accused the Micron P310 SSD, T700 SSD, P5 SSD, and P5 Plus SSD products, "as well as other similar products and devices," of infringing at least one claim of at least one of the asserted patents. In the second letter, Polaris accused the Micron 9400 Pro SSD, 3500 SSD, and M600 SSD products, "as well as other similar products and devices," of infringing at least one claim of at least one of the asserted patents. True and correct copies of the January 17, 2025, letters are attached as Exhibits A and B, respectively.

33.     On January 20, 2025, Polaris sent yet another letter—this time to the President of Micron Consumer Products Group, LLC—accusing Micron of infringing the asserted patents and

pointing to the same products identified in the January 17, 2025, letters. A true and correct copy of the January 20, 2025, letter is attached as Exhibit C.

34. Polaris's letters provided only cursory details and did not provide, for example, claim charts showing where Polaris alleges each element of the claim is found in Micron's products. Nor did Polaris point to any publicly available information that it reviewed to form its infringement allegations, such as technical manuals. Polaris also failed to assert/acknowledge that it had performed any teardowns or testing of Micron's products.

35. For each asserted patent, Polaris broadly accused "your company's SSD and other products" along with a few exemplary products. Polaris also accused "other similar products and devices," without providing any detail as to all the specific products that allegedly infringe. One of the main products accused has been discontinued for over eight years.

36. Polaris's letters also offer to license the asserted patents multiple times, noting at both the start and end of the letter that Polaris is "willing to discuss and grant you a license if that would be of interest" and that Polaris would "be glad to discuss" "potentially taking a license."

37. As the foregoing and following Paragraphs demonstrate, Polaris's letters to Micron demonstrate that Polaris did not perform a reasonable, good-faith investigation into its infringement allegations against Micron.

### Polaris's Bad-Faith Assertion of the '804 Patent

38. Upon information and belief, at least one of the patents that Polaris has asserted in its cease-and-desist letters is not owned by Polaris. Specifically, Polaris asserted that it was the owner the '804 patent," entitled "Switching Device." The '804 patent issued to Eaton Electrical IP GmbH & Co. KG and is currently assigned to Eaton Intelligent Power Limited. Publicly available USPTO assignment records contain no document to suggest that Polaris is an owner of

this patent or that it has any right to assert infringement. Polaris could have quickly confirmed

that it did not own the '804 patent before including it in its cease-and-desist letters to Micron.

39.    Polaris's '804 infringement allegations—or lack thereof—further reflect Polaris's

bad faith in sending Micron the various cease-and-desist letters. The letters state that "[w]ith

respect to the '804 patent, your company's SSD and other products, including the M600 SSD and

its switching device for direct current operation, as well as other similar products and devices,

infringe the claims of this patent." But even a cursory review of the '804 patent shows that it

describes and claims a device that would not be found in any of the SSD cards accused by Polaris.

That is not surprising given that the '804 patent is not owned by Polaris, but rather a different

company (Eaton) that is not in the business of developing the same technology as Micron. This is

a further reflection of Polaris's bad faith in accusing Micron of infringing its patents.

**Polaris's Bad-Faith Assertion of the '245 Patent**

40.    The '245 patent that Polaris asserts in its cease-and-desist letters is subject to a

terminal disclaimer. The terminal disclaimer was required to overcome a rejection of the patent

application leading to the '245 patent on the ground of non-statutory double patenting over claims

of co-pending application SN 13/929,617, which eventually issued as U.S. Patent No. 9,645,870

("the '870 patent"). The terminal disclaimer expressly states that "any patent so granted on the

instant application shall be enforceable only for and during such period that it and any patent

granted on the reference application are commonly owned."

41.    Upon information and belief, Polaris did not obtain title to the '870 patent when it

acquired the '245 patent. And according to the USPTO assignment records, Polaris does not now

own the '870 patent, which thereby renders unenforceable the '245 patent. Polaris apparently did

not investigate whether it can actually enforce the '245 patent against Micron before sending

COMPLAINT FOR DECLARATORY JUDGMENT – Page 14

Micron multiple letters accusing Micron of infringing the '245 patent.  This is further evidence of Polaris's bad faith in accusing Micron of infringing its patents.

**Polaris's Bad-Faith Assertion of the '968, '346, and '228 Patents**

42.     Three of the asserted patents—the '968, '346, and '228 patents—were originally assigned to IDT.  Before IDT filed the applications leading to those three patents, Micron and IDT "entered an alliance to develop … Solid-State Drive technologies for the server, storage and embedded markets."  June 13, 2011 IDT Press Release, https://www.businesswire.com/news/home/20110613005353/en/IDT-Collaborates-Micron-Technology-Deliver-Industry%E2%80%99s-Flash; *see also* July 27, 2009 Micron Press Release, https://investors.micron.com/node/21216/pdf ("IDT and Micron will co-develop enterprise flash controllers with a PCIe host interface optimized for Micron's flash devices and future generation RealSSD™ solid-state drives.").

43.     That alliance began on July 2, 2009, when Micron and IDT entered into a Product Development and License Agreement ("the 2009 Development Agreement").  A true and correct copy of the 2009 Development Agreement is attached as Exhibit D.

44.     ███████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
██████████████████████████████████

45.     ███████████████████████████████████████████████
███████████████████████████████████████████████████████



46. 

47.     IDT and Micron publicly announced the results of their collaboration, with IDT acknowledging that it co-developed, with Micron, the first single-chip enterprise-class flash controller with native PCIe for exclusive use in Micron's PCIe solid-state storage system. *See* IDT Collaborates With Micron Technology to Deliver Industry's First Flash Controller With Native PCI Express® for Enterprise Solid-State Drives, https://www.businesswire.com/news/home/20110613005353/ en/IDT-Collaborates-Micron-Technology-Deliver-Industry%E2%80%99s-Flash.

48.     On information and belief, the '968, '346, and '228 patents all arose out of the 2009 Development Agreement between Micron and IDT.  Indeed, each of the '968 patent, '346 patent, and '228 patents claims priority to U.S. Provisional Application No. 61/374,242 ("the '242 provisional"), which was filed in August 2010, not long after the collaboration between IDT and Micron began.  That date is important because it falls between the signing of the 2009 Development Agreement, and the announcement of the flash controller that was co-developed by

Micron and IDT.  As a result, and on information and belief, the subject matter of each of the '968, '346, and '228 patents was co-developed by Micron and IDT and is now owned by and/or licensed to Micron.

49.     That each of the '968, '346, and '228 patents were co-developed by Micron and IDT is further supported by the disclosure set forth in the '242 provisional application. That disclosure includes several technical specifications for prototype IDT products, including a nonvolatile memory host controller interface (NVMHCI) and a PCI Express (PCIe) NAND Flash controller. The '242 provisional and included documents discuss various compatible and integrated Micron products.  For example, the Flash controller specification mentions support for "Micron 34nm SLC Flash."

50.     To the extent Polaris was not aware of the collaboration between Micron and IDT, it should have been as any reasonable investigation would have uncovered it.  The collaboration between Micron and IDT was widely publicized.  Polaris's decision to ignore or failure to uncover this collaboration is further evidence of its bad-faith conduct in accusing Micron of infringement.

**Components Polaris Accuses of Infringement Are Supplied by a Licensed Entity (Microchip) and Cannot be Found to Infringe**

51.     Micron purchases components (*e.g.*, controllers) from Microchip that perform all of the allegedly infringing functionalities that are required of at least some of the asserted patents. Upon information and belief, Microchip has a license to the asserted patents and, thus, Micron's accused products incorporating Microchip controllers cannot be found to infringe the asserted patents.  Again, these facts would have been easily verifiable, such as through a simple teardown of Micron's products.  Polaris's failure to uncover these facts is additional evidence of its bad-faith assertions of infringement against Micron products.

## COUNT ONE

### (Declaratory Judgment of Noninfringement of the '968 Patent)

52.    Micron repeats and realleges Paragraphs 1 through 51 of this Complaint.

53.    The '968 patent, entitled "Interrupt Technique for a Nonvolatile Memory Controller," issued on October 8, 2013. The '968 patent on its face identifies Peter Z. Onufryk, Jayesh Patel, and Ihab Jaser as the inventors. Polaris asserts that it owns the '968 patent. A true and correct copy of the '968 patent is attached as Exhibit E.

54.    Micron and its affiliates have not infringed and do not infringe the asserted claim(s) of the '968 patent either directly, contributorily, or by inducement, literally or under the doctrine of equivalents, through their making, use, importation into the United States, sale, and/or offer for sale of the accused products.

55.    Polaris accuses certain Micron products of infringing claim 1 of the '968 patent. Claim 1 of the '968 patent is directed to:

[Preamble] 1. A nonvolatile memory controller for alerting a host processing unit to an unprocessed completion status contained in a completion queue of the host processing unit, the nonvolatile memory controller comprising:

[a] an interrupt manager configured to

[a-1] generate a completion queue state for indicating the occurrence of a completion queue event associated with the completion queue,

[a-2] generate an interrupt vector state based on the completion queue state,

[a-3] determine [sic] the completion queue of the host processing unit contains an unprocessed completion status based on the interrupt vector state, and

[a-4] generate an interrupt message packet for triggering an interrupt in the host processing unit to alert the host processing unit of the unprocessed completion status in the completion queue, and

[a-5] wherein the completion queue state includes a doorbell update status indicating whether the host processing unit has performed a doorbell update

event in which the host processing unit updates a head pointer stored in the nonvolatile memory controller for the completion queue.

56.     Contrary to Polaris's contentions, the accused products do not infringe claim 1 of the '968 patent at least because they do not contain an "interrupt manager configured to … determine [whether] the completion queue of the host processing unit contains an unprocessed completion status based on the interrupt vector state," as required by the asserted claim(s) of the '968 patent.

57.     Accordingly, at least for the above reasons, the accused products do not infringe the asserted claim(s) of the '968 patent either literally or under the doctrine of equivalents.

58.     Micron also does not induce infringement of the asserted claim(s) of the '968 patent, or otherwise indirectly infringe those claims, for at least the reasons stated above with respect to no underlying direct infringement, and also because Micron has not acted with specific intent necessary for induced infringement.

59.     Micron also does not contributorily infringe the asserted claim(s) of the '968 patent, for at least the reasons stated above with respect to no underlying direct infringement, and also because Micron has not acted with specific intent necessary for contributory infringement.

60.     As set forth above, there exists an actual controversy between Micron and Polaris with respect to alleged infringement of the '968 patent of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether Micron infringes the asserted claim(s) of the '968 patent. Accordingly, Micron desires a judicial determination and declaration of the respective rights and duties of the parties with respect to the '968 patent.

61.     Micron is entitled to a judicial determination that Micron does not directly infringe, induce others to infringe, or contribute to the infringement of the asserted claim(s) of the '968 patent.

## COUNT TWO

### (Declaratory Judgment of Noninfringement of the '228 Patent)

62.     Micron repeats and realleges Paragraphs 1 through 61 of this Complaint.

63.     The '228 patent, entitled "Nonvolatile Memory Controller with Host Controller Interface for Retrieving and Dispatching Nonvolatile Memory Commands in a Distributed Manner" issued on November 19, 2013. The '228 patent on its face identifies Peter Onufryk, Jayesh Patel, Ihab Jaser, and Ganesh T. Seshan as the inventors. Polaris asserts that it owns the '228 patent. A true and correct copy of the '228 patent is attached as Exhibit F.

64.     Micron and its affiliates have not infringed and do not infringe the asserted claim(s) of the '228 patent either directly, contributorily, or by inducement, literally or under the doctrine of equivalents, through their making, use, importation into the United States, sale, and/or offer for sale of the accused products.

65.     Polaris accuses Micron of infringing claim 1 of the '228 patent. Claim 1 of the '228 patent is directed to:

[Preamble] 1. A nonvolatile memory controller comprising:

[a] a plurality of processors; a host controller interface comprising: a command fetch module; a command dispatch module; a plurality of command assembly buffers coupled between the command fetch module and the command dispatch module;

[b] the command fetch module configured to detect a nonvolatile memory command stored in a host processing unit by monitoring a submission queue head pointer and a submission queue tail pointer stored in the nonvolatile memory controller, select a command assembly buffer of the plurality of command assembly buffers, retrieve the nonvolatile memory command from the host processing unit, write the nonvolatile memory command to the selected command assembly buffer, and update the submission queue head pointer to indicate that the host controller interface retrieved the nonvolatile memory command from the host processing unit; and

[c] the command dispatch module configured to determine the selected command assembly buffer contains the nonvolatile memory command without receiving the

submission queue head pointer and the submission queue tail pointer from the command fetch module, select a processor of the plurality of processors, and generate a first request message packet identifying the nonvolatile memory command and the selected processor;

[d] a data network coupled to the host controller interface; and

[e] a message network coupled to the host controller interface and the plurality of processors, the message network configured to route the first request message packet to the selected processor, the selected processor configured to process the nonvolatile memory command for transferring data between the host processing unit and a nonvolatile memory device through the data network.

66.     Contrary to Polaris's contentions, the accused products do not infringe claim 1 of the '228 patent at least because they do not contain the recited "command dispatch module configured to determine the selected command assembly buffer contains the nonvolatile memory command without receiving the submission queue head pointer and the submission queue tail pointer from the command fetch module," and/or "command fetch module configured detect a nonvolatile memory command stored in a host processing unit by monitoring a submission queue head pointer and a submission queue tail pointer stored in the nonvolatile memory controller … and update the submission queue head pointer to indicate that the host controller interface retrieved the nonvolatile memory command from the host processing unit" as required by the asserted claim(s) of the '228 patent.

67.     Accordingly, at least for the above reasons, the accused products do not infringe the asserted claim(s) of the '228 patent either literally or under the doctrine of equivalents.

68.     Micron also does not induce infringement of the asserted claim(s) of the '228 patent, or otherwise indirectly infringe the asserted claim(s) of the '228 patent, for at least the reasons stated above with respect to no underlying direct infringement, and also because Micron has not acted with specific intent necessary for induced infringement.

69.    Micron also does not contributorily infringe the asserted claim(s) of the '228 patent, for at least the reasons stated above with respect to no underlying direct infringement, and also because Micron has not acted with specific intent necessary for contributory infringement.

70.    As set forth above, there exists an actual controversy between Micron and Polaris with respect to alleged infringement of the asserted claim(s) of the '228 patent of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether Micron infringes the asserted claims(s) of the '228 patent. Accordingly, Micron desires a judicial determination and declaration of the respective rights and duties of the parties with respect to the '228 patent.

71.    Micron is entitled to a judicial determination that Micron does not directly infringe, induce others to infringe, or contribute to the infringement of the asserted claim(s) of the '228 patent.

## COUNT THREE

### (Declaratory Judgment of Noninfringement of the '346 Patent)

72.    Micron repeats and realleges Paragraphs 1 through 71 of this Complaint.

73.    The '346 patent, entitled "System and Method for Generating Parity Data in a Nonvolatile Memory Controller by Using a Distributed Processing Technique," issued on December 3, 2013. The '346 patent on its face identifies Peter Onufryk and Inna Levit as the inventors. Polaris asserts that it owns the '346 patent. A true and correct copy of the '346 patent is attached as Exhibit G.

74.    Micron and its affiliates have not infringed and do not infringe the asserted claim(s) of the '346 patent either directly, contributorily, or by inducement, literally or under the doctrine of equivalents, through their making, use, importation into the United States, sale, and/or offer for sale of the accused products.

COMPLAINT FOR DECLARATORY JUDGMENT – Page 22

75.     Polaris accuses Micron of infringing claim 1 of the '346 patent. Claim 1 of the '346 patent is directed to:

> [Preamble] 1. A nonvolatile memory controller for performing a data stripe operation on a plurality of data blocks, the nonvolatile memory controller comprising:
>
> [a] a plurality of command processing units, each command processing unit of the plurality of command processing units configured to receive a command of a plurality of commands for performing the data stripe operation, the plurality of commands including a plurality of data update commands and a parity write command, each command processing unit of the plurality of command processing units receiving a data update command of the plurality of data update commands configured to request a data block of the plurality of data blocks based on the data update command, receive the data block in response to the request, and write the data block to a nonvolatile memory device; and
>
> [b] a parity calculator coupled to the plurality of command processing units, the parity calculator further comprising a context memory including a page frame, the parity calculator configured to receive the plurality of data blocks as a sequence of data blocks, to generate a parity block by storing a first data block of the sequence of data blocks into the page frame and updating the data block stored in the page frame with each data block following the first data block in the sequence of data blocks, without storing each data block in a data buffer,
>
> [c] the command processing unit receiving the parity write command configured to write the parity block to a nonvolatile memory based on the parity write command.

76.     Contrary to Polaris's contentions, the accused products do not infringe claim 1 of the '346 patent at least because they do not contain the recited "a plurality of command processing units, each … configured to receive a command of a plurality of commands for performing the data stripe operation, the plurality of commands including a plurality of data update commands and a parity write command," and/or "each command processing unit … configured to request a data block of the plurality of data blocks based on the data update command," "command distribution unit configured to receive a plurality of commands for performing a data stripe operation on a plurality of data blocks, the plurality of commands comprising a plurality of data update commands and a parity write command," and/or "each command processing unit receiving

a data update command configured to request a data block of the plurality of data blocks based on the data update command," as required by the asserted claim(s) of the '346 patent.

77.     Accordingly, at least for the above reasons, the accused products do not infringe the asserted claim(s) of the '346 patent either literally or under the doctrine of equivalents.

78.     Micron also does not induce infringement of the asserted claim(s) of the '346 patent, or otherwise indirectly infringe the asserted claim(s) of the '346 patent, for at least the reasons stated above with respect to no underlying direct infringement, and also because Micron has not acted with specific intent necessary for induced infringement.

79.     Micron also does not contributorily infringe the asserted claim(s) of the '346 patent, for at least the reasons stated above with respect to no underlying direct infringement, and also because Micron has not acted with specific intent necessary for contributory infringement.

80.     As set forth above, there exists an actual controversy between Micron and Polaris with respect to alleged infringement of the asserted claim(s) of the '346 patent of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether Micron infringes the asserted claim(s) of the '346 patent. Accordingly, Micron desires a judicial determination and declaration of the respective rights and duties of the parties with respect to the '346 patent.

81.     Micron is entitled to a judicial determination that Micron does not directly infringe, induce others to infringe, or contribute to the infringement of the asserted claim(s) of the '346 patent.

## COUNT FOUR

### (Declaratory Judgment of Noninfringement of the '337 Patent)

82.     Micron repeats and realleges Paragraphs 1 through 81 of this Complaint.

83.    The '337 patent, entitled "Systems and Methods for Adaptively Selecting Among Different Error Correction Coding Schemes in a Flash Drive," issued on April 28, 2015.  The '337 patent on its face identifies Philip L. Northcott as the sole inventor. Polaris asserts that it owns the '337 patent. A true and correct copy of the '337 patent is attached as Exhibit H.

84.    Micron and its affiliates have not infringed and do not infringe the asserted claim(s) of the '337 patent either directly, contributorily, or by inducement, literally or under the doctrine of equivalents, through their making, use, importation into the United States, sale, and/or offer for sale of the accused products.

85.    Polaris accuses Micron of infringing claim 1 of the '337 patent. Claim 1 of the '337 patent is directed to:

[Preamble] 1. A method of managing one or more gears, wherein different gears correspond to different error correction code (ECC) schemes, the method comprising:

[a] receiving a request for user data stored in flash memory devices, wherein the user data can be in stored in a scrambled from [sic] or in an unscrambled form;

[b] retrieving one or more codewords containing the requested user data from a region of the flash memory devices, wherein the region is associated with a first gear;

[c] correcting the one or more codewords to detect and correct errors with the first gear;

[d] deciding whether or not to select a different gear for the region or retiring the region based on at least one of an analysis of an approximate raw bit error rate (RBER) of the region or a number of decoding iterations used to correct the requested user data, wherein the different gear has greater error correction capacity than the first gear; and

[e] after erasure of blocks associated with the region:

[f] when it is decided not to select the different gear, associating the region with a first list of available regions, wherein the first list is associated with the first gear; and

[g] when it is decided to select the different gear, associating the region with a different list of available regions, wherein the different list is associated with the different gear;

[h] wherein at least correcting and deciding are performed by an integrated circuit.

86.    Contrary to Polaris's contentions, the accused products do not infringe claim 1 of the '337 patent at least because they do not include the step of "deciding whether or not to select a different gear for the region or retiring the region based on at least one of an analysis of an approximate raw bit error rate (RBER) of the region or a number of decoding iterations used to correct the requested user data, wherein the different gear has greater error correction capacity than the first gear" as required by the asserted claim(s) of the '337 patent.

87.    Accordingly, at least for the above reasons, the accused products do not infringe the asserted claim(s) of the '337 patent either literally or under the doctrine of equivalents. Micron also does not induce infringement of the asserted claim(s) of the '337 patent, or otherwise indirectly infringe the asserted claim(s) of the '337 patent, for at least the reasons stated above with respect to no underlying direct infringement, and also because Micron has not acted with specific intent necessary for induced infringement.

88.    Micron also does not contributorily infringe the asserted claim(s) of the '337 patent, for at least the reasons stated above with respect to no underlying direct infringement, and also because Micron has not acted with specific intent necessary for contributory infringement.

89.    As set forth above, there exists an actual controversy between Micron and Polaris with respect to alleged infringement of the asserted claim(s) of the '337 patent of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether Micron infringes the asserted claim(s) of the '337 patent. Accordingly, Micron desires a judicial determination and declaration of the respective rights and duties of the parties with respect to the '337 patent.

90.     Micron is entitled to a judicial determination that Micron does not directly infringe, induce others to infringe, or contribute to the infringement of the asserted claim(s) of the '337 patent.

## COUNT FIVE

### (Declaratory Judgment of Noninfringement of the '085 Patent)

91.     Micron repeats and realleges Paragraphs 1 through 90 of this Complaint.

92.     The '085 patent entitled "Systems And Methods For Adaptively Selecting From Among A Plurality Of Error Correction Coding Schemes In a Flash Drive For Robustness And Low Latency" issued on November 10, 2015.  The '085 patent on its face identifies Philip L. Northcott as the sole inventor. Polaris asserts that it owns the '085 patent. A true and correct copy of the '085 patent is attached as Exhibit I.

93.     Micron and its affiliates have not infringed and do not infringe the asserted claim(s) of the '085 patent either directly, contributorily, or by inducement, literally or under the doctrine of equivalents, through their making, use, importation into the United States, sale, and/or offer for sale of the accused products.

94.     Polaris accuses Micron of infringing claim 1 of the '085 patent. Claim 1 of the '085 patent is directed to:

[Preamble 1] A method of selecting an error correction coding (ECC) scheme, the method comprising:

[a] determining a bit error rate associated with a region comprising a fixed number of two or more flash memory pages or integer fractions thereof, wherein the two or more flash memory pages of a region can be read simultaneously, wherein the region stores at least data payload and primary and secondary ECC parity symbols corresponding to the data payload of the region;

[b] comparing the determined bit error rate to one or more predetermined thresholds corresponding to a set of predefined gears comprising at least a first gear and a second gear, wherein the predefined gears correspond to different predefined ECC schemes, wherein the first gear has a different data payload size and correction

capability than the second gear, wherein the amount of memory space allocated for the storage of data payload within the region varies between the first gear and the second gear to accommodate a varying number of parity symbols between the first gear and the second gear; and

[c] selecting a gear from the set for the region based at least partly on the comparisons to the one or more predetermined thresholds;

[d] wherein determining, comparing, and selecting are performed by an integrated circuit.

95.    Contrary to Polaris's contentions, the accused products do not infringe claim 1 of the '085 patent at least because they do not perform the steps of "comparing the determined bit error rate to one or more predetermined thresholds corresponding to a set of predefined gears comprising at least a first gear and a second gear, wherein the predefined gears correspond to different predefined ECC schemes, wherein the first gear has a different data payload size and correction capability than the second gear, wherein the amount of memory space allocated for the storage of data payload within the region varies between the first gear and the second gear to accommodate a varying number of parity symbols between the first gear and the second gear" and "selecting a gear from the set for the region based at least partly on the comparisons to the one or more predetermined thresholds" as required by the asserted claim(s) of the '085 patent.

96.    Accordingly, at least for the above reasons, the accused products do not infringe the asserted claim(s) of the '085 patent either literally or under the doctrine of equivalents. Micron also does not induce infringement of the asserted claim(s) of the '085 patent, or otherwise indirectly infringe the asserted claim(s) of the '085 patent, for at least the reasons stated above with respect to no underlying direct infringement, and also because Micron has not acted with specific intent necessary for induced infringement.

97.    Micron also does not contributorily infringe the asserted claim(s) of the '085 patent, for at least the reasons stated above with respect to no underlying direct infringement, and also because Micron has not acted with specific intent necessary for contributory infringement.

98.    As set forth above, there exists an actual controversy between Micron and Polaris with respect to alleged infringement of the asserted claim(s) of the '085 patent of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether Micron infringes the asserted claim(s) of the '085 patent. Accordingly, Micron desires a judicial determination and declaration of the respective rights and duties of the parties with respect to the '085 patent.

99.    Micron is entitled to a judicial determination that Micron does not directly infringe, induce others to infringe, or contribute to the infringement of the asserted claim(s) of the '085 patent.

## COUNT SIX

**(Declaratory Judgment of Noninfringement of the '661 Patent)**

100.    Micron repeats and realleges Paragraphs 1 through 99 of this Complaint.

101.    The '661 patent, entitled, "Nonvolatile Memory System That Uses Programming Time To Reduce Bit Errors," issued on April 5, 2016. The '661 patent on its face identifies Rino Micheloni and Luca Crippa as the inventors. Polaris asserts that it owns the '661 patent. A true and correct copy of the '661 patent is attached as Exhibit J.

102.    Micron and its affiliates have not infringed and do not infringe the asserted claim(s) of the '661 patent either directly, contributorily, or by inducement, literally or under the doctrine of equivalents, through their making, use, importation into the United States, sale, and/or offer for sale of the accused products.

103.    Polaris accuses Micron of infringing claim 1 of the '661 patent. Claim 1 of the '661 patent is directed to:

> [Preamble] 1. A method for using programming time to reduce bit errors in a nonvolatile memory system, the method comprising:
>
> [a] programming a plurality of memory cells of a nonvolatile memory device;
>
> [b] dentifying [sic] weak memory cells of the programmed memory cells using programming time;
>
> [c] indicating, in a weak-page lookup table, pages containing an identified weak memory cell; and
>
> [d] preventing subsequent programming to the pages indicated in the weak-page lookup table.

104.    Contrary to Polaris's contentions, the accused products do not infringe claim 1 of the '661 patent at least because they do not include the steps of "identifying [sic] weak memory cells of the programmed memory cells using programming time," "indicating, in a weak-page lookup table, pages containing an identified weak memory cell," and/or "preventing subsequent programming to the pages indicated in the weak-page lookup table," as required by the asserted claim(s) of the '661 patent.

105.    Accordingly, at least for the above reasons, the accused products do not infringe the asserted claim(s) of the '661 patent either literally or under the doctrine of equivalents. Micron also does not induce infringement of the asserted claim(s) of the '661 patent, or otherwise indirectly infringe the asserted claim(s) of the '661 patent, for at least the reasons stated above with respect to no underlying direct infringement, and also because Micron has not acted with specific intent necessary for induced infringement.

106.    Micron also does not contributorily infringe the asserted claim(s) of the '661 patent, for at least the reasons stated above with respect to no underlying direct infringement, and also because Micron has not acted with specific intent necessary for contributory infringement.

107.    As set forth above, there exists an actual controversy between Micron and Polaris with respect to alleged infringement of the asserted claim(s) of the '661 patent of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether Micron infringes the asserted claim(s) of the '661 patent. Accordingly, Micron desires a judicial determination and declaration of the respective rights and duties of the parties with respect to the '661 patent.

108.    Micron is entitled to a judicial determination that Micron does not directly infringe, induce others to infringe, or contribute to the infringement of the asserted claim(s) of the '661 patent.

## COUNT SEVEN

### (Declaratory Judgment of Noninfringement of the '405 Patent)

109.    Micron repeats and realleges Paragraphs 1 through 108 of this Complaint.

110.    The '405 patent, entitled "Nonvolatile Memory System With Read Circuit for Performing Reads Using Threshold Voltage Shift Read Instruction," issued on October 24, 2017. The '405 patent on its face identifies Rino Micheloni, Alessia Marelli, and Stephen Bates as the inventors. Polaris asserts that it owns the '405 patent. A true and correct copy of the '405 patent is attached as Exhibit K.

111.    Micron and its affiliates have not infringed and do not infringe the asserted claim(s) of the '405 patent either directly, contributorily, or by inducement, literally or under the doctrine of equivalents, through their making, use, importation into the United States, sale, and/or offer for sale of the accused products.

112.    Polaris accuses Micron of infringing claim 1 of the '405 patent. Claim 1 of the '405 patent is directed to:

[Preamble] 1. A method for reducing latency of a nonvolatile memory controller comprising:

[a] storing at least one table indicating threshold voltage shift read instructions, threshold voltage offset values and corresponding index values for a nonvolatile memory device;

[b] determining at the nonvolatile memory controller a first usage characteristic of the nonvolatile memory device;

[c] determining, at a nonvolatile memory controller, whether the first usage characteristic is greater than or equal to a usage characteristic threshold; and

[d] when the first usage characteristic is determined to be greater than or equal to the usage characteristic threshold, performing all subsequent reads of the nonvolatile memory device by:

> [d.1] indexing the at least one table using an index that corresponds to a second usage characteristic of the nonvolatile memory device to identify the corresponding threshold voltage shift read instruction and the corresponding threshold voltage offset value; and

> [d.2] sending the identified threshold voltage shift read instruction and the identified threshold voltage offset value to the nonvolatile memory device.

113.    Contrary to Polaris's contentions, the accused products do not infringe claim 1 of the '405 patent at least because they do not include the steps of "reducing latency," "storing at least one table indicating threshold voltage shift read instructions, threshold voltage offset values and corresponding index values for a nonvolatile memory device," "when the first usage characteristic is determined to be greater than or equal to the usage characteristic threshold, performing all subsequent reads of the nonvolatile memory device," "indexing the at least one table using an index that corresponds to a second usage characteristic of the nonvolatile memory device to identify the corresponding threshold voltage shift read instruction and the corresponding threshold voltage offset value," and/or "sending the identified threshold voltage shift read instruction and the identified threshold voltage offset value to the nonvolatile memory device," as required by the asserted claim(s) of the '405 patent.

114.    Accordingly, at least for the above reasons, the accused products do not infringe the asserted claim(s) of the '405 patent either literally or under the doctrine of equivalents. Micron also does not induce infringement of the asserted claim(s) of the '405 patent, or otherwise indirectly infringe the asserted claim(s) of the '405 patent, for at least the reasons stated above with respect to no underlying direct infringement, and also because Micron has not acted with specific intent necessary for induced infringement.

115.    Micron also does not contributorily infringe the asserted claim(s) of the '405 patent, for at least the reasons stated above with respect to no underlying direct infringement, and also because Micron has not acted with specific intent necessary for contributory infringement.

116.    As set forth above, there exists an actual controversy between Micron and Polaris with respect to alleged infringement of the asserted claim(s) of the '405 patent of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether Micron infringes the asserted claim(s) of the '405 patent. Accordingly, Micron desires a judicial determination and declaration of the respective rights and duties of the parties with respect to the '405 patent.

117.    Micron is entitled to a judicial determination that Micron does not directly infringe, induce others to infringe, or contribute to the infringement of the asserted claim(s) of the '405 patent.

## COUNT EIGHT

### (Declaratory Judgment of Noninfringement of the '245 Patent)

118.    Micron repeats and realleges Paragraphs 1 through 117 of this Complaint.

119.    The '245 patent, entitled "Tracing Events in an Autonomous Event System," issued on November 28, 2017. The '245 patent on its face identifies Ingar Hanssen as the sole inventor.

Polaris asserts that it owns the '245 patent. A true and correct copy of the '245 patent is attached as Exhibit L.

120.    Micron and its affiliates have not infringed and do not infringe the asserted claim(s) of the '245 patent either directly, contributorily, or by inducement, literally or under the doctrine of equivalents, through their making, use, importation into the United States, sale, and/or offer for sale of the accused products.

121.    Polaris accuses Micron of infringing claim 1 of the '245 patent. Claim 1 of the '245 patent is directed to:

[Preamble] 1. A system comprising:

[a] an event subsystem that receives signaling events generated by two or more associated peripheral devices, wherein the signaling events are transferred between peripherals using multiplexed, parallel event channels of an event routing network without the use of a central processing unit (CPU) interrupt or a direct memory access (DMA) controller, wherein the signaling events allow or control a change of state in one peripheral device to automatically trigger an action on another peripheral device;

[b] a trace circuit coupled to the event subsystem that:

[b.1] receives the signaling events,

[b.2] samples the signaling events,

[b.3] receives timestamps,

[b.4] generates event trace records, wherein each event trace record includes the sampled signaling events and a respective timestamp indicative of the sampling time,

[b.4] generates save commands, and

[b.5] delivers the event trace records and save commands as outputs.

122.    Contrary to Polaris's contentions, the accused products do not infringe claim 1 of the '245 patent at least because they do not contain "an event subsystem that receives signaling events generated by two or more associated peripheral devices, wherein the signaling events are

transferred between peripherals using multiplexed, parallel event channels of an event routing network without the use of a central processing unit (CPU) interrupt or a direct memory access (DMA) controller, wherein the signaling events allow or control a change of state in one peripheral device to automatically trigger an action on another peripheral device," as required by the asserted claim(s) of the '245 patent.

123.    Accordingly, at least for the above reasons, the accused products do not infringe the asserted claim(s) of the '245 patent either literally or under the doctrine of equivalents. Micron also does not induce infringement of the asserted claim(s) of the '245 patent, or otherwise indirectly infringe the asserted claim(s) of the '245 patent, for at least the reasons stated above with respect to no underlying direct infringement, and also because Micron has not acted with specific intent necessary for induced infringement.

124.    Micron also does not contributorily infringe the asserted claim(s) of the '245 patent, for at least the reasons stated above with respect to no underlying direct infringement, and also because Micron has not acted with specific intent necessary for contributory infringement.

125.    As set forth above, there exists an actual controversy between Micron and Polaris with respect to alleged infringement of the asserted claim(s) of the '245 patent of sufficient immediacy and reality to warrant the issuance of a declaratory judgment as to whether Micron infringes the asserted claim(s) of the '245 patent. Accordingly, Micron desires a judicial determination and declaration of the respective rights and duties of the parties with respect to the '245 patent.

126.    Micron is entitled to a judicial determination that Micron does not directly infringe, induce others to infringe, or contribute to the infringement of the asserted claim(s) of the '245 patent.

127.    A judicial declaration is necessary and appropriate so that Micron may ascertain its rights regarding the claims of the '245 patent.

<u>**COUNT NINE**</u>

**(Bad Faith Assertion of Patent Infringement, Idaho Code § 48-1703)**

128.    Micron repeats and realleges Paragraphs 1 through 127 of this Complaint.

129.    The claims and demands made by Polaris constitute violations of Idaho Code § 48-1703, which makes it "unlawful for a person to make a bad faith assertion of patent infringement in a demand letter, a complaint or any other communication."

130.    Micron is an "Idaho person" as defined by Idaho Code § 48-1702(2), which incorporates Idaho Code § 48-602, because Micron is a "business entity."

131.    Micron meets the statutory definition of "target" under Idaho Code § 48-1702(3) because it has become the subject of Polaris's patent infringement allegations and demands.

132.    Polaris's bad faith conduct is unlawful under Idaho Code § 48-1703 for the many reasons outlined above, including because:

(a)    Polaris failed to conduct more than a superficial analysis comparing the claims in the asserted patents to Micron's accused products.

(b)    Polaris is asserting a patent (*i.e.*, the '804 patent) against Micron that even a cursory investigation would have revealed is not even owned by Polaris.

(c)    Polaris is asserting a patent (*i.e.*, the '245 patent) that it should have known it cannot enforce against Micron because Polaris does not own the '870 patent over which the '245 patent is terminally disclaimed.

(d)    Polaris is accusing a Micron product (the M600 SSD) of infringement that easily accessible public information confirms has not been sold for over eight years and, therefore, cannot be the subject of an infringement claim. Sales of that product fall outside the six-year damages period for patent cases.  Moreover, Polaris

COMPLAINT FOR DECLARATORY JUDGMENT – Page 36

accuses the M600 SSD of infringing an asserted patent (the '405 patent) that issued *after* the M600 SSD was discontinued, which would make it impossible for Micron's sale of that product to infringe that patent.

(e)    Polaris accuses Micron of infringing the '968, '346, and '228 patents even though Micron co-developed the alleged inventions disclosed in those patents and, thus, co-owns those patents and/or is licensed under those patents pursuant to the 2009 Development Agreement. Polaris knew or should have known about Micron's ownership of and/or license to these patents had it conducted any due diligence prior to sending its letters to Micron asserting infringement of these patents.

(f)    The functionalities that Polaris accuses of infringement with respect to at least some of the asserted patents are performed by components in Micron's accused products that are supplied by licensed third parties (*e.g.*, Microchip), such that Polaris cannot obtain relief against those Micron products using those licensed components. This is yet another fact that Polaris should have known had it performed some due diligence prior to sending letters to Micron asserting infringement.

(g)    Polaris's assertion of alleged infringement is in subjective bad faith because it knows or should know that at least some, if not all, of the allegedly infringing Micron products do not infringe the asserted patents as drafted or as commonly understood by one with relevant and ordinary skill in the art and are objectively baseless and lack merit.

133.    Polaris has violated Idaho Code § 48-1701, *et seq.* by the actions it has taken in sending the cease-and-desist letters to Micron.

134.    The bad faith assertions by Polaris violate Idaho Code § 48-1701, *et seq.*, and Micron is entitled to declaratory and monetary relief as a result.

COMPLAINT FOR DECLARATORY JUDGMENT – Page 37

135.    Micron is entitled to a finding by this Court that Polaris's demands and communications constitute bad faith assertion of patent infringement in violation of Idaho Code § 48-1703.

136.    Micron has incurred monetary damages including attorneys' fees as a result of Polaris's bad faith assertions of patent infringement.

## COUNT TEN

**(Declaratory Judgment of Unenforceability of the '968 Patent for Inequitable Conduct)**

137.    Micron repeats and realleges Paragraphs 1 through 136 of this Complaint.

138.    The '968 patent was acquired through inequitable conduct and, therefore, is unenforceable against Micron.

139.    

140.    On information and belief, the subject matter of the '968 patent was co-developed by Micron and IDT ███████████████████████ Indeed, IDT and Micron publicly announced the results of their collaboration, with IDT acknowledging that it co-developed, with Micron, the first single-chip enterprise-class flash controller with native PCIe for exclusive use in

COMPLAINT FOR DECLARATORY JUDGMENT – Page 38

Micron's PCIe solid-state storage system. *See* IDT Collaborates With Micron Technology to Deliver Industry's First Flash Controller With Native PCI Express® for Enterprise Solid-State Drives, https://www.businesswire.com/news/home/20110613005353/en/IDT-Collaborates-Micron-Technology-Deliver-Industry%E2%80%99s-Flash.

141.    The provisional application for the '968 patent further supports that the subject matter of the '968 patent was co-developed by IDT and Micron. It includes several technical specifications for prototype IDT products, including a nonvolatile memory host controller interface (NVMHCI) and a PCI Express (PCIe) NAND Flash controller, that are specific to Micron. The provisional application discusses, for example, various compatible and integrated Micron products, including a specification for a controller that discusses support for "Micron 34nm SLC Flash."

142.    On information and belief, despite the subject matter of the '968 patent being co-developed by IDT and Micron—and therefore co-owned by IDT and Micron—IDT intentionally and deceitfully set out to obtain sole ownership of that jointly-developed subject matter and did so in bad faith.

143.    On information and belief, alleged inventors Peter Onufryk, Jayesh Patel, Ihab Jaser, IDT's in-house counsel, and/or IDT's prosecuting attorneys applied for patent protection over the subject matter disclosed in the '968 patent that was jointly developed by Micron and IDT. On information and belief, Peter Onufryk, Jayesh Patel, Ihab Jaser, IDT's in-house counsel, and/or IDT's prosecuting attorneys intentionally misrepresented to the USPTO that Peter Onufryk, Jayesh Patel, and Ihab Jaser, were the sole inventors of the alleged inventions disclosed in the '968 patent. On information and belief, Peter Onufryk, Jayesh Patel, Ihab Jaser, IDT's in-house counsel, and/or IDT's prosecuting attorneys intentionally omitted Micron's involvement in contributing to the

alleged inventions claimed in the '968 patent. On information and belief, Peter Onufryk, Jayesh Patel, Ihab Jaser, IDT's in-house counsel, and/or IDT's prosecuting attorneys made these omissions and/or misrepresentations to the USPTO with specific intent to deceive the Patent Office. Based on at least those omissions and/or misrepresentations, the '968 patent issued to IDT without reflecting Micron's proper ownership interest.

144.    Based on at least those omissions and/or misrepresentations, the Examiner allowed the '968 patent to issue. The Examiner would not have done so had the Examiner known that Micron co-owned the subject matter disclosed in the '968 patent and that there was improper inventorship. Thus, those omissions and/or misrepresentations were material to the issuance of the claims of the '968 patent.

145.    Based on at least those omissions and/or misrepresentations, the '968 patent issued to IDT without recognizing Micron's ownership interest. Polaris has since obtained title to the '968 patent.

146.    Successful enforcement of the '968 patent by Polaris against Micron would grant Polaris relief only available in consequence of deliberate omissions and/or misrepresentations with respect to Micron's ownership interest in the patent.

147.    On information and belief, during the course of prosecuting the '968 patent, IDT, the alleged inventors, and IDT's patent prosecuting lawyers also intentionally ignored their obligation under the 2009 Development Agreement ███████████████████████████ of the alleged inventions set forth in the '968 patent. Instead, on information and belief, IDT, the alleged inventors, and IDT's patent prosecuting lawyers applied for patent protection without notifying Micron at all and intentionally withheld IDT's failure to comply with its obligations to Micron from the USPTO.

148.    Based on at least those omissions and/or misrepresentations, the Examiner allowed the '968 patent to issue; the Examiner would not have done so had the Examiner known that IDT did not have authority to file the applications without Micron's participation or consent.  Thus, those omissions and/or misrepresentations were material to the issuance of the claims of the '968 patent.

149.    Based on the foregoing, the '968 patent is unenforceable against Micron by reason of inequitable conduct.

## COUNT ELEVEN

**(Declaratory Judgment of Unenforceability of the '346 Patent for Inequitable Conduct)**

150.    Micron repeats and realleges Paragraphs 1 through 149 of this Complaint.

151.    The '346 patent was acquired through inequitable conduct and, therefore, is unenforceable against Micron.

152.    █████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████

153.    On information and belief, the subject matter of the '346 patent was co-developed by Micron and IDT ██████████████████████    Indeed, IDT and Micron publicly

announced the results of their collaboration, with IDT acknowledging that it co-developed, with Micron, the first single-chip enterprise-class flash controller with native PCIe for exclusive use in Micron's PCIe solid-state storage system. *See* IDT Collaborates With Micron Technology to Deliver Industry's First Flash Controller With Native PCI Express® for Enterprise Solid-State Drives, https://www.businesswire.com/news/home/20110613005353/en/IDT-Collaborates-Micron-Technology-Deliver-Industry%E2%80%99s-Flash.

154.    The provisional application for the '346 patent further supports that the subject matter of the '346 patent was co-developed by IDT and Micron. It includes several technical specifications for prototype IDT products, including a nonvolatile memory host controller interface (NVMHCI) and a PCI Express (PCIe) NAND Flash controller, that are specific to Micron. The provisional application discusses, for example, various compatible and integrated Micron products, including a specification for a controller that discusses support for "Micron 34nm SLC Flash."

155.    On information and belief, despite the subject matter of the '346 patent being co-developed by IDT and Micron—and therefore co-owned by IDT and Micron—IDT intentionally and deceitfully set out to obtain sole ownership of that jointly-developed subject matter and did so in bad faith.

156.    On information and belief, alleged inventors Peter Onufryk, Inna Levit, IDT's in-house counsel, and/or IDT's prosecuting attorneys applied for patent protection over the subject matter disclosed in the '346 patent that was jointly developed by Micron and IDT.  On information and belief, Peter Onufryk, Inna Levit, IDT's in-house counsel, and/or IDT's prosecuting attorneys intentionally misrepresented to the USPTO that Peter Onufryk and Ina Levit were the sole inventors of the alleged inventions disclosed in the '346 patent. On information and belief, Peter

Onufryk, Inna Levit, IDT's in-house counsel, and/or IDT's prosecuting attorneys intentionally omitted Micron's involvement in contributing to the alleged inventions claimed in the '346 patent. On information and belief, Peter Onufryk, Inna Levit, IDT's in-house counsel, and/or IDT's prosecuting attorneys made these omissions and/or misrepresentations to the USPTO with specific intent to deceive the Patent Office.  Based on at least those omissions and/or misrepresentations, the '346 patent issued to IDT without reflecting Micron's proper ownership interest.

157.    Based on at least those omissions and/or misrepresentations, the Examiner allowed the '346 patent to issue. The Examiner would not have done so had the Examiner known that Micron co-owned the subject matter disclosed in the '346 patent and that there was improper inventorship. Thus, those omissions and/or misrepresentations were material to the issuance of the claims of the '346 patent.

158.    Based on at least those omissions and/or misrepresentations, the '346 patent issued to IDT without recognizing Micron's ownership interest.  Polaris has since obtained title to the '346 patent.

159.    Successful enforcement of the '346 patent by Polaris against Micron would grant Polaris relief only available in consequence of deliberate omissions and/or misrepresentations with respect to Micron's ownership interest in the patent.

160.    On information and belief, during the course of prosecuting the '346 patent, IDT, the alleged inventors, and IDT's patent prosecuting lawyers also intentionally ignored their obligation under the 2009 Development Agreement ████████████████████████████████████ ████████████████████████████ of the alleged inventions set forth in the '346 patent. Instead, on information and belief, IDT, the alleged inventors, and IDT's patent prosecuting

lawyers applied for patent protection without notifying Micron at all and intentionally withheld IDT's failure to comply with its obligations to Micron from the USPTO.

161.    Based on at least those omissions and/or misrepresentations, the Examiner allowed the '346 patent to issue; the Examiner would not have done so had the Examiner known that IDT did not have authority to file the applications without Micron's participation or consent.  Thus, those omissions and/or misrepresentations were material to the issuance of the claims of the '346 patent.

162.    Based on the foregoing, the '346 patent is unenforceable against Micron by reason of inequitable conduct.

## COUNT TWELVE

**(Declaratory Judgment of Unenforceability of the '228 Patent for Inequitable Conduct)**

163.    Micron repeats and realleges Paragraphs 1 through 162 of this Complaint.

164.    The '228 patent was acquired through inequitable conduct and, therefore, is unenforceable against Micron.

165.    ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████

166.    On information and belief, the subject matter of the '228 patent was co-developed by Micron and IDT ███████████████████████    Indeed, IDT and Micron publicly announced the results of their collaboration, with IDT acknowledging that it co-developed, with Micron, the first single-chip enterprise-class flash controller with native PCIe for exclusive use in Micron's PCIe solid-state storage system.  *See* IDT Collaborates With Micron Technology to Deliver Industry's First Flash Controller With Native PCI Express® for Enterprise Solid-State Drives,    https://www.businesswire.com/news/home/20110613005353/en/IDT-Collaborates-Micron-Technology-Deliver-Industry%E2%80%99s-Flash.

167.    The provisional application for the '228 patent further supports that the subject matter of the '228 patent was co-developed by IDT and Micron. It includes several technical specifications for prototype IDT products, including a nonvolatile memory host controller interface (NVMHCI) and a PCI Express (PCIe) NAND Flash controller, that are specific to Micron. The provisional application discusses, for example, various compatible and integrated Micron products, including a specification for a controller that discusses support for "Micron 34nm SLC Flash."

168.    On information and belief, despite the subject matter of the '228 patent being co-developed by IDT and Micron—and therefore co-owned by IDT and Micron—IDT intentionally and deceitfully set out to obtain sole ownership of that jointly-developed subject matter and did so in bad faith.

169.    On information and belief, alleged inventors Peter Onufryk, Ganesh Seshan, and Ihab Jaser, IDT's in-house counsel, and/or IDT's prosecuting attorneys applied for patent protection over the subject matter disclosed in the '228 patent that was jointly developed by Micron and IDT.  On information and belief, Peter Onufryk, Ganesh Seshan, Ihab Jaser, IDT's in-house

counsel, and/or IDT's prosecuting attorneys intentionally misrepresented to the USPTO that Peter Onufryk, Ganesh Seshan, and Ihab Jaser, were the sole inventors of the alleged inventions disclosed in the '228 patent. On information and belief, Peter Onufryk, Ganesh Seshan, Ihab Jaser, IDT's in-house counsel, and/or IDT's prosecuting attorneys intentionally omitted Micron's involvement in contributing to the alleged inventions claimed in the '228 patent. On information and belief, Peter Onufryk, Jayesh Patel, Ganesh Seshan, IDT's in-house counsel, and/or IDT's prosecuting attorneys made these omissions and/or misrepresentations to the USPTO with specific intent to deceive the Patent Office. Based on at least those omissions and/or misrepresentations, the '228 patent issued to IDT without reflecting Micron's proper ownership interest.

170.    Based on at least those omissions and/or misrepresentations, the Examiner allowed the '228 patent to issue; the Examiner would not have done so had the Examiner known that Micron co-owned the subject matter disclosed in the '228 patent. Thus, those omissions and/or misrepresentations were material to the issuance of the claims of the '228 patent.

171.    Based on at least those omissions and/or misrepresentations, the '228 patent issued to IDT without recognizing Micron's ownership interest. Polaris has since obtained title to the '228 patent.

172.    Successful enforcement of the '228 patent by Polaris against Micron would grant Polaris relief only available in consequence of deliberate omissions and/or misrepresentations with respect to Micron's ownership interest in the patent.

173.    On information and belief, during the course of prosecuting the '228 patent, IDT, the alleged inventors, and IDT's patent prosecuting lawyers also intentionally ignored their obligation under the 2009 Development Agreement ███████████████████████████ ██████████████████████████████ of the alleged inventions set forth in the '228 patent.

Instead, on information and belief, IDT, the alleged inventors, and IDT's patent prosecuting lawyers applied for patent protection without notifying Micron at all and intentionally withheld IDT's failure to comply with its obligations to Micron from the USPTO.

174.    Based on at least those omissions and/or misrepresentations, the Examiner allowed the '228 patent to issue; the Examiner would not have done so had the Examiner known that IDT did not have authority to file the applications without Micron's participation or consent.  Thus, those omissions and/or misrepresentations were material to the issuance of the claims of the '228 patent.

175.    Based on the foregoing, the '228 patent is unenforceable against Micron by reason of inequitable conduct.

## COUNT THIRTEEN

**(Declaratory Judgment of Unenforceability of the '968 Patent for Unclean Hands)**

176.    Micron repeats and realleges Paragraphs 1 through 175 of this Complaint.

177.    The '968 patent was acquired through unclean hands and, therefore, is unenforceable against Micron.

178.    ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████

179.    On information and belief, the subject matter of the '968 patent was co-developed by Micron and IDT and constitutes ████████████████    Indeed, IDT and Micron publicly announced the results of their collaboration, with IDT acknowledging that it co-developed, with Micron, the first single-chip enterprise-class flash controller with native PCIe for exclusive use in Micron's PCIe solid-state storage system.  *See* IDT Collaborates With Micron Technology to Deliver Industry's First Flash Controller With Native PCI Express® for Enterprise Solid-State Drives,    https://www.businesswire.com/news/home/20110613005353/en/IDT-Collaborates-Micron-Technology-Deliver-Industry%E2%80%99s-Flash.

180.    The provisional application for the '968 patent further supports that the subject matter of the '968 patent was co-developed by IDT and Micron. It includes several technical specifications for prototype IDT products, including a nonvolatile memory host controller interface (NVMHCI) and a PCI Express (PCIe) NAND Flash controller, that are specific to Micron. The provisional application discusses, for example, various compatible and integrated Micron products, including a specification for a controller that discusses support for "Micron 34nm SLC Flash."

181.    On information and belief, despite the subject matter of the '968 patent being co-developed by IDT and Micron—and therefore co-owned by IDT and Micron—IDT set out to obtain sole ownership of that jointly-developed subject matter and did so in bad faith.

182.    On information and belief, alleged inventors Peter Onufryk, Jayesh Patel, Ihab Jaser, IDT's in-house counsel, and/or IDT's prosecuting attorneys applied for patent protection over the subject matter disclosed in the '968 patent that was jointly developed by Micron and IDT.

COMPLAINT FOR DECLARATORY JUDGMENT – Page 48

On information and belief, Peter Onufryk, Jayesh Patel, Ihab Jaser, IDT's in-house counsel, and/or IDT's prosecuting attorneys misrepresented to the USPTO that Peter Onufryk, Jayesh Patel, and Ihab Jaser were the sole inventors of the alleged inventions disclosed in the '968 patent. On information and belief, Peter Onufryk, Jayesh Patel, Ihab Jaser, IDT's in-house counsel, and/or IDT's prosecuting attorneys intentionally omitted Micron's involvement in contributing to the alleged inventions claimed in the '968 patent. On information and belief, Peter Onufryk, Jayesh Patel, Ihab Jaser, IDT's in-house counsel, and/or IDT's prosecuting attorneys made these omissions and/or misrepresentations to the USPTO with specific intent to deceive the Patent Office. Based on at least those omissions and/or misrepresentations, the '968 patent issued to IDT without reflecting Micron's proper ownership.

183. During the course of prosecuting the '968 patent, IDT, the alleged inventors, and IDT's patent prosecuting lawyers engaged in additional bad-faith conduct. For example, on information and belief, they intentionally ignored their obligation under the 2009 Development Agreement ███████████████████████████████████████ of the alleged inventions set forth in the '968 patent. Instead, on information and belief, IDT, the alleged inventors, and IDT's patent prosecuting lawyers applied for patent protection without notifying Micron at all.

184. Moreover, on information and belief, the subject matter of the alleged inventions in the '968 patent included Micron's confidential information that was subject to nondisclosure agreements between Micron and IDT that were effective as of October 11, 2007. On information and belief, IDT incorporated this confidential material into patent applications, including the patent application resulting in the '968 patent. In doing so, IDT simultaneously publicly disclosed

material that Micron had disclosed only under a confidentiality agreement and prevented Micron from sharing in the benefits of that disclosure (*i.e.*, ownership of the '968 patent).

185.    Polaris's infringement claims with respect to the '968 patent are only available due to the foregoing bad-faith and deceitful acts, omissions, and misrepresentations, all of which have caused Micron to lack an ownership interest in the '968 patent.  The '968 patent is therefore unenforceable against Micron under the doctrine of unclean hands.

186.    Upon information and belief, Polaris has also contributed to the unclean hands that render the '968 patent unenforceable against Micron.  Polaris is aware, or should be aware, of the 2009 Development Agreement between Micron and IDT.  The existence of that agreement and at least its general terms were made publicly known through various press releases. Moreover, upon information and belief, Polaris performed due diligence prior to purchasing the asserted patents and would have uncovered the 2009 Development Agreement. Thus, on information and belief, Polaris knows or should know that Micron has a license to all subject matter that was jointly developed by IDT and Micron under the 2009 Development Agreement, including the subject matter of the '968 patent.  Despite this, Polaris has, in bad faith, accused Micron of infringing the '968 patent.

187.    Based on the foregoing, the '968 patent is unenforceable against Micron under the doctrine of unclean hands.

## COUNT FOURTEEN

### (Declaratory Judgment of Unenforceability of the '346 Patent for Unclean Hands)

188.    Micron repeats and realleges Paragraphs 1 through 187 of this Complaint.

189.    The '346 patent was acquired through unclean hands and, therefore, is unenforceable against Micron.

190.    ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

191.    On information and belief, the subject matter of the '346 patent was co-developed by Micron and IDT and ████████████████████████    Indeed, IDT and Micron publicly announced the results of their collaboration, with IDT acknowledging that it co-developed, with Micron, the first single-chip enterprise-class flash controller with native PCIe for exclusive use in Micron's PCIe solid-state storage system.  *See* IDT Collaborates With Micron Technology to Deliver Industry's First Flash Controller With Native PCI Express® for Enterprise Solid-State Drives,    https://www.businesswire.com/news/home/20110613005353/en/IDT-Collaborates-Micron-Technology-Deliver-Industry%E2%80%99s-Flash.

192.    The provisional application for the '346 patent further supports that the subject matter of the '346 patent was co-developed by IDT and Micron. It includes several technical specifications for prototype IDT products, including a nonvolatile memory host controller interface (NVMHCI) and a PCI Express (PCIe) NAND Flash controller, that are specific to Micron. The provisional application discusses, for example, various compatible and integrated

Micron products, including a specification for a controller that discusses support for "Micron 34nm SLC Flash."

193.    On information and belief, despite the subject matter of the '346 patent being co-developed by IDT and Micron—and therefore co-owned by IDT and Micron—IDT set out to obtain sole ownership of that jointly-developed subject matter and did so in bad faith.

194.    On information and belief, alleged inventors Peter Onufryk, Inna Levit, IDT's in-house counsel, and/or IDT's prosecuting attorneys applied for patent protection over the subject matter disclosed in the '346 patent that was jointly developed by Micron and IDT.  On information and belief, Peter Onufryk, Inna Levit, IDT's in-house counsel, and/or IDT's prosecuting attorneys misrepresented to the USPTO that Peter Onufryk and Inna Levit were the sole inventors of the alleged inventions disclosed in the '346 patent. On information and belief, Peter Onufryk, Inna Levit, IDT's in-house counsel, and/or IDT's prosecuting attorneys intentionally omitted Micron's involvement in contributing to the alleged inventions claimed in the '346 patent. On information and belief, Peter Onufryk, Inna Levit, IDT's in-house counsel, and/or IDT's prosecuting attorneys made these omissions and/or misrepresentations to the USPTO with specific intent to deceive the Patent Office.  Based on at least those omissions and/or misrepresentations, the '346 patent issued to IDT without reflecting Micron's proper ownership interest.

195.    During the course of prosecuting the '346 patent, IDT, the alleged inventors, and IDT's patent prosecuting lawyers engaged in additional bad-faith conduct.  For example, on information and belief, they intentionally ignored their obligation under the 2009 Development Agreement ████████████████████████████ of the alleged inventions set forth in the '346 patent.  Instead, on information and belief, IDT, the

alleged inventors, and IDT's patent prosecuting lawyers applied for patent protection without notifying Micron at all.

196.    Moreover, on information and belief, the subject matter of the alleged inventions in the '346 patent included Micron's confidential information that was subject to nondisclosure agreements between Micron and IDT that were effective as of October 11, 2007.  On information and belief, IDT incorporated this confidential material into patent applications, including the patent application resulting in the '346 patent.  In doing so, IDT simultaneously publicly disclosed material that Micron had disclosed only under a confidentiality agreement and prevented Micron from sharing in the benefits of that disclosure (*i.e.*, ownership of the '346 patent).

197.    Polaris's infringement claims with respect to the '346 patent are only available due to the foregoing bad-faith and deceitful acts, omissions, and misrepresentations, all of which have caused Micron to lack an ownership interest in the '346 patent.  The '346 patent is therefore unenforceable against Micron under the doctrine of unclean hands.

198.    Upon information and belief, Polaris has also contributed to the unclean hands that render the '346 patent unenforceable against Micron.  Polaris is aware, or should be aware, of the 2009 Development Agreement between Micron and IDT.  The existence of that agreement and at least its general terms were made publicly known through various press releases. Moreover, upon information and belief, Polaris performed due diligence prior to purchasing the asserted patents and would have uncovered the 2009 Development Agreement. Thus, on information and belief, Polaris knows or should know that Micron has a license to all subject matter that was jointly developed by IDT and Micron under the 2009 Development Agreement, including the subject matter of the '346 patent.  Despite this, Polaris has, in bad faith, accused Micron of infringing the '346 patent.

COMPLAINT FOR DECLARATORY JUDGMENT – Page 53

199.    Based on the foregoing, the '346 patent is unenforceable against Micron under the doctrine of unclean hands.

## COUNT FIFTEEN

**(Declaratory Judgment of Unenforceability of the '228 Patent for Unclean Hands)**

200.    Micron repeats and realleges Paragraphs 1 through 199 of this Complaint.

201.    The '228 patent was acquired through unclean hands and, therefore, is unenforceable against Micron.

202.    

203.    On information and belief, the subject matter of the '228 patent was co-developed by Micron and IDT and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮    Indeed, IDT and Micron publicly announced the results of their collaboration, with IDT acknowledging that it co-developed, with Micron, the first single-chip enterprise-class flash controller with native PCIe for exclusive use in Micron's PCIe solid-state storage system.  *See* IDT Collaborates With Micron Technology to Deliver Industry's First Flash Controller With Native PCI Express® for Enterprise Solid-State

Drives,     https://www.businesswire.com/news/home/20110613005353/en/IDT-Collaborates-Micron-Technology-Deliver-Industry%E2%80%99s-Flash.

204.     The provisional application for the '228 patent further supports that the subject matter of the '228 patent was co-developed by IDT and Micron. It includes several technical specifications for prototype IDT products, including a nonvolatile memory host controller interface (NVMHCI) and a PCI Express (PCIe) NAND Flash controller, that are specific to Micron. The provisional application discusses, for example, various compatible and integrated Micron products, including a specification for a controller that discusses support for "Micron 34nm SLC Flash."

205.     On information and belief, despite the subject matter of the '228 patent being co-developed by IDT and Micron—and therefore co-owned by IDT and Micron—IDT set out to obtain sole ownership of that jointly-developed subject matter and did so in bad faith.

206.     On information and belief, alleged inventors Peter Onufryk, Jayesh Patel, Ganesh Seshan, and Ihab Jaser, IDT's in-house counsel, and/or IDT's prosecuting attorneys applied for patent protection over the subject matter disclosed in the '228 patent that was jointly developed by Micron and IDT.  On information and belief, Peter Onufryk, Jayesh Patel, Ganesh Seshan, Ihab Jaser, IDT's in-house counsel, and/or IDT's prosecuting attorneys misrepresented to the USPTO that Peter Onufryk, Jayesh Patel, Ganesh Seshan, and Ihab Jaser, were the sole inventors of the alleged inventions disclosed in the '228 patent. On information and belief, Peter Onufryk, Jayesh Patel, Ganesh Seshan, Ihab Jaser, IDT's in-house counsel, and/or IDT's prosecuting attorneys intentionally omitted Micron's involvement in contributing to the alleged inventions claimed in the '228 patent. On information and belief, Peter Onufryk, Jayesh Patel, Ganesh Seshan, Ihab Jaser, IDT's in-house counsel, and/or IDT's prosecuting attorneys made these omissions and/or

misrepresentations to the USPTO with specific intent to deceive the Patent Office.  Based on at least those omissions and/or misrepresentations, the '228 patent issued to IDT without reflecting Micron's proper ownership interest.

207.    During the course of prosecuting the '228 patent, IDT, the alleged inventors, and IDT's patent prosecuting lawyers engaged in additional bad-faith conduct.  For example, on information and belief, they intentionally ignored their obligation under the 2009 Development Agreement ███████████████████████████████████████████████ of the alleged inventions set forth in the '228 patent.  Instead, on information and belief, IDT, the alleged inventors, and IDT's patent prosecuting lawyers applied for patent protection without notifying Micron at all.

208.    Moreover, on information and belief, the subject matter of the alleged inventions in the '228 patent included Micron's confidential information that was subject to nondisclosure agreements between Micron and IDT that were effective as of October 11, 2007.  On information and belief, IDT incorporated this confidential material into patent applications, including the patent application resulting in the '228 patent.  In doing so, IDT simultaneously publicly disclosed material that Micron had disclosed only under a confidentiality agreement and prevented Micron from sharing in the benefits of that disclosure (*i.e.*, ownership of the '228 patent).

209.    Polaris's infringement claims with respect to the '228 patent are only available due to the foregoing bad-faith and deceitful acts, omissions and misrepresentations, all of which have caused Micron to lack an ownership interest in the '228 patent.  The '228 patent is therefore unenforceable against Micron under the doctrine of unclean hands.

210.    Upon information and belief, Polaris has also contributed to the unclean hands that render the '228 patent unenforceable against Micron.  Polaris is aware, or should be aware, of the

2009 Development Agreement between Micron and IDT.  The existence of that agreement and at least its general terms were made publicly known through various press releases. Moreover, upon information and belief, Polaris performed due diligence prior to purchasing the asserted patents and would have uncovered the 2009 Development Agreement. Thus, on information and belief, Polaris knows or should know that Micron has a license to all subject matter that was jointly developed by IDT and Micron under the 2009 Development Agreement, including the subject matter of the '228 patent.  Despite this, Polaris has, in bad faith, accused Micron of infringing the '228 patent.

211.    Based on the foregoing, the '228 patent is unenforceable against Micron under the doctrine of unclean hands.

## PRAYER FOR RELIEF

WHEREFORE, Micron seeks relief from the Court as follows:

A.    Declaring that judgment be entered in favor of Micron and against Polaris;

B.    Declaring that neither Micron nor any of its affiliates infringe, either directly or indirectly, contributorily, by inducement, or willfully, any claim of the '968, '228, '346, '337, '085, '661, '405, and '245 patents by making, using, selling, offering to sell, and/or importing the Micron accused products;

C.    Declaring that the '968, '346 and '228 patents are unenforceable against Micron;

D.    Finding this to be an exceptional case under 35 U.S.C. § 285, and awarding Micron its reasonable attorneys' fees;

E.    Damages described in the above claims, pursuant to Idaho Code § 48-1706(1)(b);

F.    Attorneys' fees, pursuant to Idaho Code § 48-1706(1)(c);

G.    Injunctive relief against Polaris's bad faith assertion conduct, pursuant to Idaho Code § 48-1706(1)(a);

H.    A bond posted by Polaris in an amount equal to a good faith estimate of Micron's costs to litigate Polaris's infringement claims and the amounts reasonably likely to be recovered by Micron under Idaho Code § 48-1701, *et seq*., pursuant to Idaho Code § 48-1707;

I.    Exemplary damages, pursuant to Idaho Code § 48-1706(1)(d);

J.    Costs pursuant to Idaho Code § 48-1706(1)(c);

K.    Any other costs associated with this case;

L.    Pre-judgment and post-judgment interest; and

M.    Any other remedy or relief to which Micron may be entitled and which the Court deems just, proper, and equitable.

## JURY DEMAND

Micron demands a trial by jury on all claims and issues so triable.

Dated: February 7, 2025                     HOLLAND & HART LLP

                                            */s/Teague I. Donahey*
                                            Teague Donahey
                                            Christopher C. McCurdy

                                            Ryan B. McCrun
                                            (*Pro Hac Vice* Forthcoming)
                                            JONES DAY
                                            900 Lakeside Avenue
                                            Cleveland, OH 44114
                                            Telephone: 216.586.3939

                                            *Attorneys for Plaintiffs*

34183189_v1

COMPLAINT FOR DECLARATORY JUDGMENT – Page 58